argument next in United States v. Hilgers. Counsel, you may proceed. Thank you. Good morning, Your Honors. For the record, I am Stephen Haddon. I'm a lawyer from Helena, Montana. I represent Scott Hilgers in this case. If we look at what the District Court did in this case, and each of the arguments we have made is taken in isolation, one might draw the conclusion that no harm, no foul. But our position is, is that when the factors that we have outlined in our brief to the Court are taken together, the 60-month sentence, this 5-year sentence which was imposed upon Mr. Hilgers when there was a guideline range of 12 to 18 months, not only is that sentence unreasonable, but in arriving at that sentence, we believe the Court committed reversible error. Well, Counsel, didn't the Court go through the sentencing factors under 3443A? Under 3553, Your Honor. The statute that indicates the factors that the sentencing judge must have taken into account in developing a reasonable sentence. Your Honor, the – and I love Judge Lovell dearly. And Judge Lovell of all the judges that I practice in front of in Montana is probably the most meticulous of judges. The answer to your question is yes. Judge Lovell did go through the 3553 factors, 3553A factors. However, he seemed to review and look at those factors in isolation. After, as the Court is likely aware, there was a major issue with the pre-sentence investigation report about an amount of loss. This scheme, which it was, with Mr. Hilgers as a mortgage broker and Todd Rice, who was a customer, a client of his, to purchase these rental properties, these income properties in Helena, was set up by virtue of false documentation, which was submitted to lenders. It's somewhat ironic that I am arguing this case after the United States Congress has provided $700 billion to impart cover I would submit schemes of this nature. And what we had with the pre-sentence investigation report is that the probation officer had determined, had the true facts been known to the lenders, namely that Mr. Rice, the borrower's income was not as it should be, and that he was not going to occupy these properties as a principal residence, then there would have been a 10 percent down payment required, and then there was another. And we're not arguing actual innocence here, are we? No, no. Okay. But that's where all of this started with the Court. And we took the position that there was no loss because these properties were performing. We objected to that conclusion by the probation officer. The Court at that point, and he, Judge Lovell actually took a recess when he said, I'm going to sustain your objection. And then just seemingly, at least in our view, Your Honors, threw the guidelines out the window and said, I don't think that they apply. And he went back, took his recess, came back and had apparently recalculated the figures and came out and sentenced my man to a 60-month term of imprisonment where there was a 12- to 18-month guideline range.  He didn't say that they didn't apply or that they weren't sufficient to punish this individual, to prevent other crimes of this kind. He said something like, otherwise people will think that crime does pay. He's done this many times in the past. I'm not sure that I read him as saying the guidelines don't apply, but just that they don't get me where I think this person needs to go in terms of sentencing. I want to take those in reverse, Your Honor. The comment that was made about crime not paying had to do with the co-defendant. The United States had taken a position that these properties should be forfeited. And Judge Lovell did not agree with that. And that dealt with Mr. Rice. What Judge Lovell said, and I have the quote here, is this is not a case within the heartland that would permit the use of guidelines. Okay. That's, I guess I was asking you for a strictly legal question. It seems to me that the judge was not saying the guidelines don't apply, just that they're only guidelines and I don't think they give me as much as this person deserves. So I think as a legal matter, didn't he understand that he had the discretion to use the guidelines or not? Your Honor, I will acknowledge that point, that the guidelines are, as we all know, a starting point in crafting the sentence. He did go through the machination of guideline calculation and all of that. But when all the factors are taken together, and we also look to the conclusions by the district court based upon what we consider to be non-developed facts about Mr. Hilder's conning his mother and conning his wife, he seemed to have just said, I'm disregarding the guidelines and my read, and of course I have been told I'm wrong many times, but my read is that the court can't do that. The guidelines still have to be taken into consideration, the application notes which are within the guidelines. If we disagree with that reading of the judge's comments, if we read it as the judge saying, I understand that these are the guidelines, but I just don't think they're sufficient for this person because his crime falls outside the heartland, then aren't we reviewing for reasonableness rather than for legal error at that point? Yes, you are. And it's under an abuse of discretion standard. And I will be the first to recognize, Your Honors, that this is a tough row to hoe. And the standard of review for this court, this court is not to substitute its judgment for the district court. And I recognize that. And it is the abuse of discretion standard is extremely difficult for us in this case. If there's no further questions, I'll reserve time if I believe it's necessary. And Mr. Connell. Very well. You have about two minutes, counsel. Thank you, Your Honor. We'll hear from the government. Good morning. May it please the Court. My name is Carl Ross, head with the U.S. Attorney's Office out of Great Falls. And as always, it's a great privilege to appear before the Court today on behalf of the United States in affirming or attempting to endorse judge-level sentence in this matter. One initial question. You just heard Mr. Haddon say that we should review on an abuse-of-discretion standard. Do you agree with that? Your Honor, this is a difficult situation because so many of the points raised by Mr. Hilderson in his appeal were not particularly raised with judge-level for him to address this idea that we should not rely on. That prompts my question. And so we believe that a plain-error standard is appropriate and has set forth that in our brief as to many of the issues raised by Mr. Hilderson in his appeal what he sees as the flaws in the Court's factual findings or what weight they gave the fact. It was not made clear to judge-level at the time so that he could further expound on them or, in fact, reconsider. Maybe at that time, judge-level would have thought better of what he was relying on should those issues have been more directly raised. This case, Your Honor, is one which puts the Department at a little bit of odds in cases such as Manyweather and more recently in Whitehead. The United States has strongly urged the Court to stay closer to the guidelines where there was a downward departure. Here we have a situation where there was a setting aside of the guidelines in what constitutes a significant upward departure, which we ask the Court to affirm. I would point out that the basis upon which judge-level emphasized in his departure upward was the recidivist nature of this defendant. Some may say that, well, isn't that taken care of in the criminal history? And I would suggest that if the Court looks at the pre-sentence report from pages 10 through 16, you really don't get the flavor from Mr. Hilder's background merely by a criminal history calculation. This is a man that started his criminal history in 1994 and spent the remainder of that decade either in prison or violating his release conditions by committing other acts of fraud. Then he goes back into prison and he's released again from a pre-release center in March or May of 2004. And by the end of that year, he's up to this particular scheme. He goes to work as a mortgage broker and is ginning up false documents and making false representations so that his friend Todd Rice can obtain more homes. Obviously, also enriching Mr. Hilder as mortgage brokers are incentivized to put out as many mortgages as they can, they get paid for that. So I think it's more than just the criminal history here that Judge Lovell was looking at. It was the sheer repetition and chronic nature of Mr. Hilder's background that he appeared not to be a person that had ever been deterred by any prior sentence. And therefore, we believe that there was certainly sufficient basis for the decision the judge made saying this guideline range simply doesn't capture what this man is really like and I have to set him aside and go under the 3553A factors and impose a sentence of 60 months. Counsel, what was the precise conduct at issue here, the knowing use of counterfeit W-2s to justify the loan application? There was that, Your Honor. Your Honor, there was also an indication in all four of these properties that they would be the primary residence of the borrower, which alters significantly how mortgages are treated. Obviously, if you're going to live in the home you're borrowing from, you have more of an investment in it, and therefore the risk is lower. And if you're doing as Mr. Rice was doing, wasn't living in any of these homes, he was just putting them up for rental. Thank you, Your Honor. Counsel, you have some reserved time. Just one point, Your Honors. Could I just interrupt? Yes, sir. Standard of review, do you agree with the government that it's plain error? Well, I think the ñ when we look at whether an objection was raised to a factual determination at sentencing by the district court, if an objection was not raised, then it is a plain error review to that factual determination. I believe under CARDI that the standard of review for reviewing the sentencing decision, and I would couch that as a whole, Your Honor, is an abuse of discretion standard. That would be our position, Your Honor. Just one minor point. I think I know Mr. Rostad pointed out that there is not an in-court objection made to certain of the, quote, unquote, factual conclusions that Judge Lovell had made, specifically with respect to the conning, supposed conning of his mother and then the conning of his wife. The conduct giving rise to the apparent fraud committed upon the wife, that particular part was included in Judge Lovell's statement of reasons. He did not specifically, if my memory serves me correctly, he did not specifically discuss that commission of fraud upon his wife during the sentencing hearing. But with respect to conning his mother, it was a surprise that he said that. And again, I would invite the court to go back and look to the underlying basis for that comment from a state probation officer report, which had been included in a prior criminal case against Mr. Hilders. And it seems to us to be a stretch. So even under a plain error standard, we don't believe the judge could pull that out of those facts. Thank you, Your Honor. Thank you, Counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bybee